## BELLOWS *vs.* DEWEY.

The statute relative to the repair of mills, dams, &c, owned by tenants in common, does not, on the neglect of one tenant, authorize another to erect a new mill or dam, substantially different from the former, and to call on his cotenant, under an appraisal, for contribution.

ASSUMPSIT, to recover expenditures made for the repair of a mill dam, in pursuance of the statute giving authority to repair, where such property is owned by joint tenants, or tenants in common.

The first count alleged that the plaintiff and defendant were tenants in common of a certain mill dam, which needed repairs, &c. The fourth count alleged that the plaintiff and defendant were occupiers in common of a mill dam, &c. The other counts were for work and labor done, at the request of the defendant, and for money paid, laid out, and expended for him, and to his use. The defendant pleaded the general issue.

It appeared in evidence, that John M. Tillotson, in 1814, was seized in fee of a tract of land adjoining Connecticut river—that at that time there was upon this land a saw mill, and grist mill, and a mill for clothing works and carding machines. Above these mills, a wing dam extended out towards the centre of the river ; and on the Vermont shore

was a similar wing dam, conveying water to works on that side of the river. These dams were usually connected in the centre, so as to retain most of the water of the river. From the wing dam, on the New-Hampshire side of the river, the water was conveyed by a flume, first to the saw mill, then to the grist mill, and from the grist mill flume, or bulk head, water was drawn by another flume for the use of the clothing mill, which was situated some fifty or sixty feet below the grist mill.

After the decease of said Tillotson, his administrator, Thomas S. Tillotson, on the 26th of July, 1825, conveyed to Thomas Carlisle "the saw and grist mill, and the land 'on which the same stands, together with the water privi- 'lege at the Little falls, so called, being all said Tillotson's 'interest in said privilege, except the carding and clothing 'mill, and the lands sold therewith." The said deed covered the land on which the wing dam aforesaid is situated. On the same day said Thomas S. Tillotson, as administra- tor, conveyed to Samuel A. Pearson "A certain tract of 'land near and below the grist mill, on which the clothing 'mill stands, estimated to contain half an acre, the clothing 'mill, and machinery for cloth-dressing and wool-carding 'appertaining to said real estate, and water privilege for said 'mill, flume, &c., as now enjoyed." The plaintiff claims under Thomas Carlisle, and the defendant has the title of Pearson.

On the 4th of July, 1836, the selectmen of Northumber- land issued a notice to the defendant, to meet them at said dam, to ascertain whether repairs were necessary; and on the 9th of said July they met, in pursuance of said notice, and notified the defendant to repair his proportion of said dam in ten days. The defendant, not having repaired his portion of the dam, said repairs were made by the plaintiff, and on the 26th of September, 1837, the selectmen apprais- ed the amount of said repairs, and adjudged the defend- ant's portion of the same to be $182.10, and taxed their

costs at $5.00, which was afterwards demanded by the plaintiff.

The defendant contended that the plaintiff had not acted within the instructions given by the selectmen, which were for the repair of the old dam, whereas an entire new dam had been built; and that the selectmen did not order the building of a new dam, neither had they authority under the statute so to do.

On this point the evidence was, that the wing of the dam extended up, diagonally, towards the centre of the river, about 170 feet—that the first 30 feet of the new dam was built in part on the old dam—the sill of the new dam, next the river, was placed outside of the old dam, and the inner side of the new dam was placed where the inner sill of the dam was formerly situated. From this point the new dam gradually diverged from the old dam, towards the centre of the river, in a straight line, and at the distance of 30 feet left the site of the old dam entirely, and at the upper extremity of the old dam was 70 feet distant from the old dam. The timbers of the old dam, and such stones as were needed, were used in the new dam. It was in evidence, that the old dam might have been repaired, so as to answer for the use of the mills; but it was almost totally out of repair.

The defendant contended, on this testimony, that he was not liable for any expenditures of the plaintiff in erecting said new dam. It was also contended that the owners on the Vermont side of the river should have been notified, and made parties to these proceedings.

A verdict was taken for the plaintiff, for the amount of the expenditures and cost, subject to be set aside, and judgment entered for the defendant, if the court shall so direct.

*Wells*, for the plaintiff.

*Smith*, and *Cushman*, for the defendant.

PARKER, C. J.* The statute which is relied on as the foundation of this action, provides that all necessary repairs in any mill, mill-dam, or flume, owned by joint tenants, or tenants in common, in this state, shall hereafter be made by such tenants, each contributing thereto in proportion to his interest therein; and in case any person shall neglect to make immediately the necessary repairs belonging to his part or share in such mill, mill-dam, or flume, any one of the other tenants may apply to the selectmen of the town, &c., whose duty it shall be to notify the several owners, or occupiers, of the time when they will repair to the place; and if it shall be the opinion of the major part of the selectmen that such repairs are necessary, they shall notify in writing the delinquent party to repair his part of the mill, &c. Similar proceedings are to be had where several persons are joint tenants, or tenants in common, of the privilege of the water, &c.

The statute then provides, that if either of the owners or occupiers shall neglect to repair his part, within the time ordered and allowed by the selectmen, the party aggrieved may build or repair the part of the one so neglecting, and the selectmen shall estimate and appraise the same, &c.; and the person so building or repairing shall have a right to demand, and recover the said amount of the occupant, lessor, or freeholder of the mill, mill-dam or flume, which was out of repair, at his election, with costs. *N. H. Laws* 187.

It is very evident that, under this statute, one party is not authorized to call upon the other to erect a mill, or dam, in a different place, or of a different character from that already existing. Nor can he, upon the neglect of the other to repair, proceed to erect a mill, or dam, or flume, substantially different from the former, and compel the other to pay. The statute authorizes a repair of the mill, &c. A rebuilding may, perhaps, under some circumstances, be considered a repair, within the meaning of the statute; but it cannot be ex-

* WILCOX, J., having been of counsel, did not sit.

tended beyond a substantial rebuilding. It does not author-ize one party to erect a new mill, or dam, varying substan-tially in its dimensions and situation from the old.

It appears in this case that there is a substantial difference between the dam erected by the plaintiff and that previously existing, notwithstanding it may have been intended for the same use. In one place it is seventy feet distant from the former one. The selectmen were not authorized to make an appraisal in such case, and the proceedings cannot sustain the plaintiff's action.

*Judgment for the defendant.*