## CURRIER *v.* SUTHERLAND.

A levy on premises, of which the execution debtor is in possession claiming a homestead therein, made without any application on the part of the debtor for the assignment of a homestead to him, is valid against a grantee of the debtor, whose deed is fraudulent and void as to creditors, although the value of the premises does not exceed the amount exempted by law from attachment or levy.

It is not impossible for a conveyance of property, which is exempt from attachment or levy, to be fraudulent and void as to creditors.

TRESPASS, *quare clausum fregit,* by David A. Currier against John B. Sutherland.    Plea, the general issue, and soil and freehold.    The plaintiff claimed the land under a deed from Eunice Smith, dated May 1, 1855, on which day Mrs. Smith, having a title in fee simple, was in the occupation of the premises as her homestead.    The defendant claimed under a deed from Alonzo P. Carpenter, who, having a judgment against Mrs. Smith, levied his execution upon the land in

1870. The defendant claimed that the plaintiff's deed, which was without consideration, was fraudulent and void as against Carpenter. The premises were never worth $500. In the levy of Carpenter's execution, no claim of a homestead was made, and the levy was made without regard to any homestead right. The plaintiff claimed, and requested the court to instruct the jury, that, although his deed might be fraudulent and void against a creditor making a legal levy, still he was entitled to a verdict if Eunice Smith continued to make her home on the premises at the time of the levy, claiming a homestead there because the levy was made in disregard of her homestead right. But the court declined so to instruct the jury, and instructed them to the contrary; to which the plaintiff excepted. The verdict was for the defendant, and the plaintiff moved for a new trial.

*H. Bingham* (with whom was *Woods*), for the plaintiff.

I. In this case it becomes necessary, first, to inquire whether or not the plaintiff had a possession which would entitle him to a verdict against a wrong-doer; and secondly, to determine whether or not the defendant was a wrong-doer, or can justify his trespass by the title he had.

II. It is a well-settled principle of the law, that actual possession in the plaintiff is sufficient to enable him to maintain trespass against a wrong-doer— *Chandler* v. *Walker*, 21 N. H. 282, *Richardson* v. *Palmer*, 38 N. H. 212, *Barstow* v. *Sprague*, 40 N. H. 27; and there is no question that the plaintiff had such actual possession.

III. Then it being settled that the plaintiff had possession which would entitle him to maintain trespass against a wrong-doer, the only question remaining is, Was the defendant a wrong-doer? He most certainly was, unless he had a title paramount to that of the plaintiff.

IV. The case finds that Eunice Smith was upon the premises, claiming it as her homestead, at the time of the levy of Carpenter's execution. This being the fact, there could have been no legal levy, as it was her homestead and of less value than $500, because the homestead is exempt from attachment and the levy of an execution to the extent of $500. Such being the case, there could have been no legal title in the defendant, and, consequently, he was a trespasser, and the plaintiff is entitled to maintain an action against him as such.

V. That the legal title may have been in Eunice Smith is not inconsistent with the right of the plaintiff to maintain this suit, because the actual possession was in him at the time of the trespass, and presumptively the rightful and beneficial possession. *Albin* v. *Lord*, 39 N. H. 205, which is a case where the legal title was in the wife of the plaintiff, but it was held he might maintain trespass against a wrong-doer.

VI. That Eunice Smith omitted to claim a homestead at the time of the levy of Carpenter's execution, and that the levy was made regardless of her homestead right, had not the effect to deprive her of it, or legalize the levy and title under it. *Fletcher* v. *State Capital Bank*,

37 N. H. 369, and authorities there cited; *Norris* v. *Moulton*, 34 N. H. 392.

VII. A levy made upon a homestead without setting off the homestead right is wholly void. *Fogg* v. *Fogg*, 40 N. H. 282. Therefore the defendant, having no legal title as between him and Eunice Smith, had no title that could justify his trespass; and it seems most conclusive, from the authorities cited above, that the plaintiff can maintain this suit and was entitled to the verdict. To entitle the plaintiff to the verdict, it is not necessary to show a good title as between him and Eunice Smith, but simply to show one paramount to that of the defendant,—which is done by showing that the plaintiff was in actual possession, and that the defendant had no title to the same, because there was nothing upon which a legal levy could be made. The premises being of less value than $500, there could be no set-off at the time of the levy of Carpenter's execution.

The court then erred in declining to instruct the jury that if Eunice Smith continued to make her home on the premises at the time of the levy of the execution, and the levy was made in disregard of her homestead right, the plaintiff was entitled to a verdict,—and by reason of this a verdict was given for the defendant, which should be set aside and a new trial granted.

VIII. We next submit that Eunice Smith being the absolute owner in fee simple of the premises at the time of the conveyance to the plaintiff, and said premises then being her homestead and of less value than $500, it follows, that by no earthly possibility could such conveyance be a fraud on her creditors, because the homestead to the value of $500 is absolutely exempt from attachment and levy on execution; and it would follow, if a homestead was of less value than $500, then there could be nothing about or connected with such a homestead with which a creditor could have any rights; and, further, because the owner of a homestead may sell, convey, mortgage, or dispose of the same by exchange, or in any way he pleases, without the interference of creditors — *Fogg* v. *Fogg*, 40 N. H. 288, *Tucker* v. *Kenniston*, 47 N. H. 268, *Barney* v. *Leeds*, 51 N. H. 253; and, further, because it is a moral impossibility for a debtor to infringe upon any legal right which his creditor can have, by any disposition which he can make of property absolutely exempt from attachment and levy on execution. *Patten* v. *Smith*, 4 Conn. 450; *Danforth* v. *Beattie*, 43 Vt. 138; *Foster* v. *McGregor*, 11 Vt. 595.

If this verdict can stand, it is inevitable that perpetual motion, which philosophers and inventors have failed to discover until now, has been found at last; for, certainly, if the defendant by virtue of Carpenter's levy can turn the plaintiff out of possession, Mrs. Smith by virtue of her homestead right can then turn the defendant out, and the plaintiff by virtue of his deed from Mrs. Smith can then turn her out, and this may be repeated *ad infinitum*.

*C. W. & E. D. Rand*, for the defendant.

I. The homestead of Mrs. Smith was a mere personal right, which the plaintiff could not set up for her. *Judge of Probate* v. *Simonds*, 46 N. H. 368; *Gunnison* v. *Twitchel*, 38 N. H. 62; *Bennett* v. *Cutler*, 44 N. H. 69.

II. Although the deed of May 1, 1855, was void as to creditors, it was sufficient to change the character of Mrs. Smith's occupancy at the time of the levy.

*Lang*, on the same side.

We make no question as to the plaintiff's possession. The pleadings admit his possession, and compel the defendant to show a title in himself paramount to the plaintiff's; not a title as against the whole world on every conceivable question: that is not the issue joined. There may be a title paramount to that of either party; but it will not help the plaintiff, unless he derives his title from it, or holds possession by virtue of it. He can neither derive title from nor hold possession under the mere homestead right of a third person; for it is a personal right, and not assignable. Had Eunice Smith conveyed her right of homestead to the plaintiff after the attachment, it even then would not have availed him. *Bennett* v. *Cutler*, 44 N. H. 69. Her interest being no title, but a mere personal right which she alone could enforce,— *Judge of Probate* v. *Simonds*, 46 N. H. 368,—the extent was *inter alios*, and could not be called in question here.

The highest title the plaintiff can be presumed to have is mere possession, as the jury found his deed void as to creditors. The policy of the homestead law was to benefit the person entitled to it, not to enable one who had nothing but possession, and that fraudulent, to set it up against the just claims of creditors.

In *Bennett* v. *Cutler*, before cited, it was in substance held that the premises could be attached and levied on as against all persons except those entitled to the homestead. As well might one in possession without title object to a levy because dower had not been assigned to the living widows of all the former owners, as for the plaintiff to object, in the present case, because a homestead was not assigned to Mrs. Smith.

The plaintiff not only asks that he may be permitted to set up title in a third person, but the inchoate right of a third person, which right that person only can complete and establish into a title, or may waive or abandon as she may elect, and no person can do the one or the other for her: it is for her benefit, and depends on conditions to be performed by her.

In *Fogg* v. *Fogg*, 40 N. H. 282, cited by the plaintiff, there was an application to the officer to set out the homestead, which was disregarded; and in pronouncing the levy void, the court are careful to confine it to that case as to that defendant, who was the person entitled to the homestead and who had made the application. We are not aware that a levy has ever been held void because a homestead has

not been set out, unless there has been an application to have it set out.

*Carpenter*, on the same side.

I. The levy of Carpenter's execution was valid as against Eunice Smith. She made no application to have her homestead set out, and thereby waived her right under the statute, and is driven to her petition or bill in chancery to have the same assigned to her. *Barney* v. *Leeds*, 51 N. H. 253 ; *Fletcher* v. *Bank*, 37 N. H. 369 ; *Fogg* v. *Fogg*, 40 N. H. 282.

When the debtor makes no application to have his homestead set out by the officer, he cannot object that the whole estate is levied upon without regard to the homestead. Indeed, it operates to his advantage by satisfying so much more of his debt, while his right to have his homestead assigned in subsequent proceedings remains the same as if the levy had been made subject to the homestead. *Hovey* v. *Bartlett*, 34 N. H. 278 ; *Fogg* v. *Fogg*, 40 N. H. 282 ; *Fletcher* v. *Bank*, 37 N. H. 369 ; *Tucker* v. *Kenniston*, 47 N. H. 267.

The right so to levy may in many cases be important to the creditor, as, for example, where he has reason to suppose that the homestead has been abandoned, of which the fact that no application is made to the officer under the statute is evidence, though not conclusive. Whether after such a levy the fee could be upon petition set out as a homestead, or only a life estate, is not material in this case, but may become so; and it is submitted it must be only a life estate, the reversion passing by the levy.

The fact, that the court upon the trial of this case found upon the evidence—the question not being in issue—that the premises were never worth $500, is immaterial. *Tidd* v. *Quinn*, 52 N. H. 345.

If the levy was good as against Smith, it passes, of course, the title to the whole estate, until a part or the whole thereof is divested upon proper proceedings instituted by her for the assignment of her homestead. This right is personal to her ; the defendant cannot set it up for her. *Gunnison* v. *Twitchel*, 38 N. H. 62.

II. But if the levy was invalid as against Eunice Smith, it was not absolutely void, but voidable only, and nobody but Eunice Smith can be heard to object to it. *Marshall* v. *Pierce*, 12 N. H. 127 ; *Esty* v. *Long*, 41 N. H. 103 ; *Tibbetts* v. *Flanders*, 18 N. H. 290.

III. But as I understand it, the plaintiff does not now attack the levy, but puts his case upon the ground—not taken at the trial—that, inasmuch as Eunice Smith's homestead was absolutely exempt from attachment and levy, the conveyance thereof by her to the plaintiff " could by no earthly possibility be a fraud upon her creditors ; " and that the " owner of a homestead may sell, convey, mortgage, or dispose of the same in any way he pleases, without the interference of creditors." Whereupon it is submitted that the homestead, until it is set out and assigned as such under the statute, cannot be conveyed ; and

this, irrespective of the question whether the whole estate, to which the right appertains, be of greater or less value than $500. If such estate be conveyed it passes, and the conveyance takes effect in all respects precisely as if no homestead right had ever appertained thereto. *Bennett* v. *Cutler*, 44 N. H. 69, is direct and explicit to this point, and covers the whole ground. It cannot be distinguished from this case. The fact that it is exempt from attachment and levy, so long as the debtor holds and occupies it as a homestead, is immaterial. The question is, How is it to be treated and deemed when he parts with it? We say that he must be deemed to have abandoned it as a homestead before he conveys it: an absolute conveyance *ex necessitate* involves such abandonment.

*Bennett* v. *Cutler* explicitly holds that if in this case Carpenter had attached the estate prior to the deed to the plaintiff, and the plaintiff had in good faith taken his deed and paid therefor a full consideration, the property would nevertheless have passed by the levy. But the homestead is no more subject to attachment than to levy; yet nobody will deny that the grantee in the case last put would hold the estate under his deed, but for the prior attachment. The property—all except the mere right of homestead—is fastened by the attachment, and when that right is abandoned and lost, as by absolute conveyance or otherwise, it becomes instantly like any other property subjected to the attachment.

In *Bennett* v. *Cutler* the deed of May 3, 1858, was *bona fide*, and for full consideration; and it is plain that the grantee must have held under his deed, unless the homestead right was abandoned and lost at some time, however short, prior to the delivery of the deed. If it remained the debtor's homestead until the deed was delivered, and took effect, the attachment could not hold or affect it because it was his homestead, and it could not reach it after the delivery of the deed because it was no longer the debtor's property. The case of *Bennett* v. *Cutler* must therefore go upon the ground that the homestead right was abandoned and lost before the debtor's deed took effect, and that the property *eo instante* became subject to the attachment. And so, likewise, was the homestead right of Eunice Smith abandoned before the delivery of her deed to the plaintiff. No matter how short may be the time, it is enough that it was liable to attachment before the deed took effect. In truth, I submit that she must be deemed to have abandoned her homestead right at the moment when she finally decided to make the conveyance.

IV. It is submitted further that a debtor cannot, as against his creditor, give away property exempt from attachment—convey it absolutely upon the face of the conveyance, to be held by the grantee upon a secret trust for the benefit of the grantor—more especially if the trust be of such a character that it cannot be enforced.

1. The statutory exemptions are provided, not alone for the protection and benefit of the debtor, but also for the welfare of the public—to keep the debtor out of the poor-house, prevent his becoming a public

charge, and incidentally also for the benefit of his creditors—to prevent his being turned naked upon the world, and deprived of the means of earning the wherewithal he may discharge his debts. The law prevents the creditor from reducing his debtor to absolute want, not to deprive him of his just dues, but to enable the debtor the better to discharge them. It forbids the creditor's taking his debtor's homestead, his last cow, the tools of his occupation, &c., in order that he may keep and use them, not to enable him to give them away. Hence the exemption attaches only so long as the property is kept by the debtor, not to the avails when sold or conveyed, nor, I submit, to the property itself when given away—*Manchester* v. *Burns*, 45 N. H. 482, and cases there cited —and it terminates at the debtor's decease. It seems plain, therefore, that the exemption does not confer upon the debtor the right " to dispose of the property in any way he pleases without the interference of the creditors ; " it simply exempts it from attachment and levy : in all other respects it stands like any other property. The debtor has the same interest in and power over it as he has over other property,—the same power and the same right " to sell, convey, mortgage, exchange, or dispose of it as he pleases," and not a whit more. This is all that is necessary or desirable for the debtor's protection. The creditor cannot seize the property, and apply it upon his debt against the will of the debtor ; but his equitable right to have it so applied remains the same. The debtor may, if he chooses, waive the exemption ; he may himself so apply it ; and, if he parts with it at all, is equitably bound to do so, especially if he parts with it without consideration. A mere naked donee has manifestly no more equitable right to hold, as against a creditor of the donor, exempted property than any other.

2. No exemption attaches to the avails of the homestead place when voluntarily sold, nor for a term longer than one year when sold under process—Gen. Stats., ch. 124, sec. 17 ; and it is submitted, therefore, that any arrangement by which such avails are put beyond the reach of creditors, or by which they are delayed or hindered in reaching the same, is a fraud upon them. If the plaintiff had bought the estate and given his note or agreed to pay therefor, he might have been charged as the vendor's trustee. *Manchester* v. *Burns*, above cited. In other words, if the plaintiff had made an honest trade, bought for a fair and full consideration, the property or its avails might have been levied upon ; but inasmuch as he has got the property into his hands, whether by fraud and chicane or not, certainly without consideration, it is contended that it can be reached in no form, and he is entitled to keep it.

3. It may well be that the exigencies of a debtor's circumstances— of his business—preclude him from maintaining a homestead,—compel him to abandon it ; and the fraud consists in placing the property beyond the reach of creditors after the abandonment.

4. Suppose the estate to which a homestead right appertains to be worth $1000, and to be voluntarily conveyed: can the grantee hold against the levying creditor $500 worth of the property, upon the

ground that *quoad* so much of it there was not and by no "earthly possibility" could be any fraud? Clearly not. *Gunnison* v. *Twitchel*, 38 N. H. 62 ; *Bennett* v. *Cutler*, 44 N. H. 62. Is, then, the question whether a creditor can levy to be made to depend upon whether the whole property is worth a dollar more, or a dollar less, than $500 ? If that be so, if the value be material, it can be determined, I submit, only upon application to have the homestead assigned, "for that is the only appraisal recognized by the statute." *Tidd* v. *Quinn*, 52 N. H. 345.

5. The doctrine contended for by the plaintiff would open a wide door to fraud. What is to prevent a fraudulently disposed debtor from acquiring and in the same way disposing of any number of successive homesteads?—occupying one, and having a dozen others holden secretly in trust for him ? No one of them, plainly, can be levied upon, unless the conveyance was fraudulent ; but if a voluntary conveyance is not fraudulent in its inception, when and how can it become so ? Fraud may be purged—there is *locus penitentiæ* for the fraudulent ; but how can an honest transaction be made fraudulent and void by matter *ex post facto ?* If a title, valid as against the world, vested in the grantee at the time, how can it be made invalid by any act to which he is not a party ? and especially by an act entirely innocent, nay, praiseworthy in itself, as by the grantor's acquiring a new homestead ? When a debtor conveys his homestead place by deed, absolute upon its face, but upon a secret trust not in writing, which the grantee refuses to perform (which is exactly this case), and the debtor thereupon acquires a new homestead, it is, I submit, too plain for argument—plain beyond all "earthly possibility" of doubt—that such conveyance is a fraud upon creditors.

6. It is further submitted that no one can have a right of homestead in an estate to which he has no legal or equitable title, and in which he has no legal interest, even though he may occupy it and claim a homestead therein ; that it therefore makes no difference whether the debtor remains in occupation of the premises after the conveyance by him or not, or whether he continues to claim a homestead therein, or whether he subsequently acquires a new homestead. The only material question is, whether he has abandoned or lost his right of homestead in the estate conveyed.

7. That a creditor cannot question the validity of a mortgage, while it subsists as such, of exempted property, may be conceded. *Danforth* v. *Beattie*, 43 Vt. 138 ; *Patten* v. *Smith*, 4 Conn. 450. The mortgagor has the possession and use of the property,—remains, in fact, as against the creditor, the owner. Whether the mortgagee, after a foreclosure of a mortgage given without consideration, can hold the property as against the creditor, is an altogether different question. By the foreclosure, all the mortgagor's interest is wholly and for ever divested. It is in effect an absolute conveyance by the debtor. If the debtor sell his only cow, the purchase-money may be held by trustee process. If a mortgagee sell it upon his mortgage for, say, $50, while his mortgage debt is but $20 or $1, or one cent, the surplus may clearly be

reached in the same way. But if there is really *nothing* due upon the mortgage,—if the mortgagee is honestly entitled to *nothing*,—the plaintiff solemnly argues that he is entitled to keep the whole.

8. The plaintiff cannot insist upon the trust as valid for the purpose of holding the property against the defendant, and claim that it is void for the purpose of holding it against Eunice Smith. Besides, if the trust be valid, it is a naked one. The use was at once executed by the statute in Mrs. Smith. She held the legal title, and it passed by the levy. *Upham* v. *Varney*, 15 N. H. 462. The plaintiff has no interest in the land, and is no more entitled to question the levy than any other mere stranger.

9. The case of *Danforth* v. *Beattie*, 43 Vt. 138, in so far as it is inconsistent with any position here taken, runs directly in the teeth of both *Bennett* v. *Cutler* and *Gunnison* v. *Twitchel*, before cited. Perhaps there is no inconsistency, the Vermont homestead law being materially different from ours. See Gen. Stats. of Vt., ch. 58, sec. 2. But the precise point now presented to this court was plainly not there considered, nor indeed has it been in any case which I have been able to find.

10. Finally, such voluntary conveyances by a debtor of his homestead place must operate as a fraud upon his creditors after his death, if not before. Then there are no exemptions; all his property is applicable to the payment of debts, and it would be the duty of the administrator to sell the estate for that purpose, and his deed would convey to the purchaser a good title. *Kingsbury* v. *Wild*, 3 N. H. 30. Will it be argued that a conveyance, perfectly honest and valid during the grantor's lifetime, is made fraudulent and void by the act of God ?

It is submitted, therefore, respectfully, that a voluntary conveyance, without consideration, by a debtor of his homestead place, is a fraud upon his creditors, and that the mere fact of such conveyance must of itself be held conclusive evidence of a waiver and abandonment by the debtor, before his deed takes effect, of all right of homestead therein.

HIBBARD, J. It may be assumed that the plaintiff, at the time the alleged trespass was committed, was in possession of the premises in controversy. This is claimed by him, and is not denied by the defendant. That this is enough to entitle the plaintiff to maintain trespass against a mere wrong-doer is very true, but the decision of this case cannot turn on so narrow a view.

Both parties claim to own the premises, and the evidence of their respective titles is before us. Both claim under Eunice Smith ; and it is conceded that on May 1, 1855, she owned the property, and that it was her homestead place, and was for that reason exempt from attachment or levy. On that day she conveyed it to the plaintiff, and this conveyance constitutes his only title. But fifteen years afterwards, Mr. Carpenter, having an execution against Mrs. Smith, caused it to be levied upon the premises, and the defendant claims under the title thus acquired. That this levy was made upon a valid execution and in due form of law has not been disputed. The great question between the

parties therefore is, Which of these is the superior title ? The plaintiff's being earlier than the defendant's must prevail, if acquired in good faith and for a valuable consideration. But the jury, by returning a verdict for the defendant, have found that the plaintiff's deed was fraudulent and void as to Carpenter: how then does he seek to overcome that obstacle ?

I. The plaintiff contends that although his deed may have been fraudulent and void against a creditor making a legal levy, still, if Eunice Smith continued to make her home on the premises at the time of the levy, claiming a homestead there, the levy was void because it was made in disregard of her homestead right. His position is, that Mrs. Smith, by continuing at the time of the levy to make her home on the premises, claiming a homestead there, relieved him from the ordinary consequences of attempting to hold property against creditors by virtue of a conveyance which is found to be fraudulent and void as to such creditors.

But we do not see how the plaintiff can be permitted to invoke to his aid the occupation of the premises by Mrs. Smith when the levy was made. Whether she was or was not affected by the levy, or whether, if actually in possession down to the time of the trespass, she could or could not have maintained this action against the defendant, are questions which we have no occasion to determine now. That she was in possession, and may have had a right as against the defendant to remain in possession, entitles the plaintiff to maintain no action against the defendant. A right to a homestead on the part of Mrs. Smith cannot be set up in this way to settle the rights of other parties. Mr. Carpenter may have supposed, because she had conveyed the premises, that she had abandoned her homestead. That she did not request the officer to set it out, has a tendency to show that she had abandoned it. A creditor who thus levies in good faith upon an estate to which a homestead right appertains, no application being made to have it assigned, takes his title, it is true, subject to a liability to a subsequent assignment; but when the entire value has been applied on his execution, we see no occasion for holding that he shall not be entitled to whatever may remain after a homestead shall have been subsequently assigned, which must be the effect of holding this levy void.

Although Mrs. Smith may have been entitled to have the whole premises set off to her as her homestead, she could not assign this right to the plaintiff. A right to a homestead is not assignable. *Gunnison* v. *Twitchel*, 38 N. H. 62, 68 ; *Bennett* v. *Cutler*, 44 N. H. 71 ; *Judge of Probate* v. *Simonds*, 46 N. H. 363, 368. " The right of homestead, before the same has been set out and assigned, is   *   *   only an inchoate right, personal to the parties in whom it exists." FOWLER, J., in *Foss* v. *Strachn*, 42 N. H. 42. If Mrs. Smith had transferred her occupation and right of possession to a tenant, the exemption might cease. DOE, J., in *Austin* v. *Stanley*, 46 N. H. 52. That she was or had been the owner of the property in controversy, instead of simply having a homestead right in it, cannot effect the question in this view.

If Mrs. Smith had a homestead right in 1870 at the time of the levy, it was by virtue of the act of 1868, ch. 1, sec. 33, which gives such right not exceeding $500 in value to "the wife, widow, and children of every person who is owner of a homestead, or of any interest therein, occupied by himself or herself, and his or her family, * * for and during the life of such wife or widow, and the minority of such children." If she had a homestead right in 1855, at the date of the deed, it was by virtue of the act of 1851, ch. 1089, sec. 1, which gave such right not exceeding $500 in value to "the head of each family." Whether she had a minor child in 1870, or was the head of a family in 1855, does not appear. But that she had at the time of the levy a homestead right in the premises in controversy, unless she had lost it by abandonment, has not been controverted by the defendant, nor has any objection been raised against the plaintiff's deed, because it was not made with the approval of the judge of probate, as was required if she had minor children. Act of 1868, ch. 1, sec. 35.

The course of proceedings for setting off a homestead by "the officer to whom any writ of execution against the husband is delivered, to be levied on his real estate," is pointed out in the Gen. Stats., ch. 124, sec. 5. We find no statutory provision, in force since the enactment of the General Statutes, which in terms provides for setting off a homestead when the execution debtor is not a "husband;"* but the defendant has interposed no objection on this account. If Mrs. Smith, being entitled to a homestead, had applied to the officer making the levy to set it out to her, it would have been his duty to do so; and if he had disregarded her application, the levy would have been void. *Fogg* v. *Fogg*, 40 N. H. 282; *Tucker* v. *Kenniston*, 47 N. H. 268.

But no application having been made by her to the officer for an assignment of a homestead, she waived her right to an assignment under the statute, and the creditor under such circumstances was at liberty to disregard her homestead right—Foster, J., in *Barney* v. *Leeds*, 51 N. H. 253, 270; but her right, if any, was not lost by the neglect, but may yet be secured to her by resort to other forms of proceeding. *Fletcher* v. *State Capital Bank*, 37 N. H. 369, 395; *Fogg* v. *Fogg*, 40 N. H. 282, 286; *Barney* v. *Leeds*, 51 N. H. 253, 269, 271, 272, 279; *Tidd* v. *Quinn*, 52 N. H. 344.

Although the case states that the whole value of the premises in controversy is less than $500, "the only way to settle that fact is upon such application to have a homestead assigned in some of the ways provided by law, for that is the only appraisal recognized by the statute." Sargent, C. J., in *Tidd* v. *Quinn*, 52 N. H. 345. If, however, as seems to be a conceded fact, the value of the entire premises was and is clearly less than $500, the defendant may, upon a proper application by Mrs. Smith for the assignment of a homestead, unless she has already abandoned her homestead right, be divested of all right

---

*See ch. 1, Laws of 1868, secs. 35 and 36, and Judge Nesmith's act, ch. 29, Laws of 1871, p. 531.     Reporter.

in the property during the time she may see fit to occupy it as a homestead. Whether after the termination of a homestead right, not claimed at the time of a levy and subsequently set out upon petition, the levying creditor may, as suggested in Mr. Carpenter's argument, hold the reversion in the part assigned as a homestead, which in this case it may be supposed would be the entire estate, contrary to what would have been the result if application had been made in the first instance to the officer to cause a homestead to be set out, is a question we have not considered.

It is very clear that the instruction requested by the plaintiff as to the effect, if his deed was fraudulent and void as to creditors, of the continued occupation by Mrs. Smith of the premises as her homestead, was rightly denied, and that the instruction actually given was correct.

II. But the plaintiff's counsel has strenuously contended that he was entitled to a verdict, upon the ground that the conveyance to him could not be fraudulent. His position is, that as the creditors of Eunice Smith could not lawfully attach or levy upon her homestead, it being of less value than $500, " it follows that by no earthly possibility could such conveyance be a fraud on her creditors." As there was no ground for a verdict in favor of the defendant, except because the plaintiff's deed was fraudulent as to creditors, it appears to be true, if the deed could not possibly be fraudulent as to creditors, that the plaintiff was entitled to a verdict. The case does not show that this position was taken at the trial, but we have considered it.

Is it, then, impossible for a conveyance of property which is exempt from attachment or levy to be fraudulent as to creditors? Authorities upon both sides of this perplexing question are cited in 1 Story's Eq. Jur., secs. 367, 368. We have also found additional authorities on both sides of the question, besides those cited by counsel in the present case. We refer to *Woodworth* v. *Paige*, 5 Ohio St. 70 ; *Wood* v. *Chambers*, 20 Tex. 247 ; *Dreutzer* v. *Bell*, 11 Wis. 114 ; *Lishy* v. *Perry*, 6 Bush. (Ky.) 515 ; *Crummen* v. *Bennet*, 68 N. C. 494 ; *Piper* v. *Johnston*, 12 Minn. 60, 69 ; *Beals* v. *Clark*, 13 Gray 18 ; *Stevenson* v. *White*, 5 Allen 148 ; *Rayner* v. *Whitcher*, 6 Allen 292 ; *Mannan* v. *Merritt*, 11 Allen 582. It may be remarked that the opinions in those cases generally contain but little reasoning, and do not indicate that the question was much considered.

The argument of Mr. Bingham upon this point is certainly plausible, but after much hesitation we have concluded that it is untenable, and we are of the opinion that it is not impossible for such a conveyance to be fraudulent as to creditors. That property alleged to have been conveyed in fraud of creditors was exempt from attachment or levy, is a circumstance to be weighed by the jury in determining upon the validity of the conveyance, but it is not conclusive.

The exemption of a homestead from attachment or levy is a personal privilege which the law gives to the owner, in order that he or his family may occupy it ; not that, if they cease to have occasion to occupy it, he may place it beyond the reach of his creditors. Mrs. Smith had

a right to occupy the homestead in controversy so long as she lived. She had a right to sell it, and purchase another homestead with the avails, and occupy that. A *bona fide* exchange of this homestead for another probably would have been sustained against an existing attachment had there been one—BELLOWS, J., in *Tucker* v. *Kenniston*, 47 N. H. 267, *Black* v. *Epperson*, 40 Tex. 162; but she could not lawfully give it away, as against the rights of her creditors. If she had been about to take up her permanent abode in another place, there can be no doubt that her homestead, or the avails of it, unless again invested in exempted property, would have justly belonged to them. How, then, could she give it away, if unable longer to occupy it, without committing a fraud upon them? It was hers to occupy, not to give away. The law does not exempt the avails of it when sold. On the contrary, if the plaintiff had made an honest purchase, and given his note for the full consideration, the whole might have been held by trustee process. *Manchester* v. *Burns*, 45 N. H. 482, 488; *Wooster* v. *Page*, 54 N. H. 125, 127.

If Mrs. Smith, after her conveyance to the plaintiff, had purchased another homestead, and removed to it from the one in controversy, clearly the new homestead would have been exempt from attachment or levy. And can it be pretended that the old one would have remained exempt? If it would, then nothing can prevent an insolvent debtor from " salting down " as many successive homesteads by giving them to his friends to hold in trust for him, as the funds of his creditors in his hands will enable him from time to time to buy. If it would not, it must be because the conveyance of it was fraudulent and void as to creditors from the beginning. It is absurd to say that a conveyance, which is honest and valid when executed and for an indefinite time afterwards, can be made fraudulent and void by the subsequent acts of the grantor, over which the grantee has no control.

It may be that Mrs. Smith, after making an absolute conveyance, might retain her homestead right against everybody but her grantee— *Crummen* v. *Bennet*, 68 N. C. 494, *Cox* v. *Wilder*, 2 Dill. C. C. 45, *Vogler* v. *Montgomery*, 54 Mo. 577—as she might, after making a mortgage of it, against everybody but the mortgagee. It may be that the rights of creditors as against her might be controlled by her continued occupancy. To-day, while she occupies it, they might not be able to levy on the property; to-morrow, after she has abandoned it, they might. A levy made while she was in the occupation, if she requested the officer to cause a homestead to be set out to her, might be void, and therefore incapable of being made good by her subsequent abandonment; if made after she had ceased to occupy, it might be valid. But we cannot say that the title of the plaintiff, if it was good at its inception, could be made bad by her subsequent purchase of and removal to a new homestead. That would be the same thing as to say that his title was good so long as he took nothing by his deed, but bad the moment his grantor permitted him to enter into possession.

Suppose this property to have been worth $1,000, and to have been

conveyed without consideration in trust for the grantor: whether Mrs. Smith, though she had conveyed it by an absolute deed, might, so long as the grantee permitted her to remain in possession, have a homestead right, of which no levying creditor could divest her, we need not now decide, but that the levying creditor would hold all but the homestead right against the grantee, the grantor, and the whole world, no one will deny ; and so far as the grantee is concerned, it is not easy to tell what would prevent his holding that also. It seems that such a conveyance, being confessedly fraudulent in part, must be held to be fraudulent *in toto ;* and if a grantee, without consideration of a homestead place' worth $500 more than the amount exempted by law, can hold nothing against creditors, we look in vain for reasons why, if the entire value of the place was $500 or less, he should hold the whole.

Under the liberal statutes now in force, an insolvent debtor may easily have $1000 or more invested in beasts of the plow, a cow, a hog, and a pig, tools of his occupation, a pew in a meeting-house, a sewing machine, a library, furniture, and other articles, which are exempted from attachment or levy. But this is that he may be permitted to use them. It is a privilege personal to him, and which may be waived by him. If, no longer needing them, he gives them away, how can the gift be sustained against creditors ? Why should they not have the property as soon as he ceases to need it for the purposes for which the law protected it ? That he commits a fraud upon them if he gives it away, seems too plain to require argument. If, instead of giving it away because he no longer needs it, he gives it away and purchases other similar property to supply its place, the absurdity of holding the gift to be valid, though really no greater, becomes more obvious.

Suppose, after giving it away, he dies : suppose the gift is made in view of approaching death : shall the donee hold the property, or shall the administrator of the donor hold it for the benefit of his creditors ? Manifestly there can be but one answer to this inquiry. If the estate is insolvent, it must go to the administrator. And, surely, it will not be contended that the donee may hold it absolutely against creditors during the lifetime of the donor, but must lose it the moment he is dead. The absolute owner of property cannot be divested of his title by the death of a former owner. If the donee in such a case owns the property as against creditors while the donor lives, he certainly must own it as against the rights of creditors after he dies. And it is equally certain that the creditors of the donor might be defrauded by his giving it away in his lifetime if the donee could hold it after his decease.

Although the owner of a homestead place worth no more than $500, if he make a seasonable application to have a homestead set off to him whenever a levy is about to be made, may hold it, including the reversion, beyond the reach of his creditors during his life, it is plain that he might have a fraudulent intent to give it to a friend, to the exclusion of creditors, after his decease, and might actually defraud them if, though unable to give any title by making a will, he could give a good title by making an absolute deed.

In the case before us it would appear that Mrs. Smith, after making an absolute conveyance to the plaintiff, was permitted for fifteen years to occupy the premises as her homestead, and that the plaintiff never entered into possession until after one of her creditors had levied upon the property. If it was impossible for this conveyance to be fraudulent as to creditors, then, certainly, every insolvent owner of a homestead, in view of approaching death, or in view of death at some indefinite future time, though unable to devise it, can convey it without consideration, to be held in trust for his own use during his life, and at his death to go to the grantee, whether he dies within a day, or a year, or a quarter of a century.

The ingenious suggestion of the plaintiff's counsel, that, although perpetual motion in mechanics yet remains undiscovered, an instance of perpetual motion in law will occur if the verdict in this case is sustained, upon the ground that if the defendant by virtue of Carpenter's levy can turn the plaintiff out of possession, Mrs. Smith by virtue of her homestead right can then turn the defendant out, and the plaintiff by virtue of his deed from Mrs. Smith can then turn her out, and this may be repeated *ad infinitum*, presents a somewhat troublesome illustration. But whatever effect an absolute conveyance by Mrs. Smith, without any change of occupancy, may have had upon her homestead right as against creditors, it seems that, if the plaintiff has turned her out of possession by virtue of an absolute conveyance from her, she must be deemed to have abandoned the occupation of the premises as her homestead, and will not be entitled to turn the defendant out of possession after he has succeeded in turning the plaintiff out. We intend, however, to leave the question of abandonment, as it may hereafter arise between the defendant and Mrs. Smith, to be decided upon all the facts as they may then appear.

Numerous additional illustrations in support of the conclusion we have reached may be found in the argument of Mr. Carpenter upon this branch of the case. Several positions taken by him remain unanswered, and we have failed to discover how they can be answered. We deem it sufficient to refer to them, instead of occupying space by incorporating them in this opinion.

*Judgment on the verdict.*