NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

U.S. District Court for the District of New Hampshire
No. 2023-0023

KATHERINE R. BRADY

v.

LAWRENCE P. SUMSKI, CHAPTER 13 TRUSTEE

Argued: June 6, 2023
Opinion Issued: August 17, 2023

Deming Law Office, of Nashua (Leonard G. Deming, II on the brief and orally), for the plaintiff.

Lawrence P. Sumski, Chapter 13 Bankruptcy Trustee, self-represented party, on the brief and orally.

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Anthony J. Galdieri, Zachary N. Towle, assistant attorney general, and Mary F. Stewart, attorney, on the brief, and Mary F. Stewart orally), for the State, as intervenor.

Ford, McDonald & Borden, P.A., of Portsmouth (Ryan M. Borden and Edmond J. Ford on the brief), for Michael Askenaizer, Trustee for the Bankruptcy Estates of William Linane and Debora Linane, as amicus curiae.

DONOVAN, J.  Pursuant to Supreme Court Rule 34, the United States District Court for the District of New Hampshire (McAuliffe, J.) certified two questions of law for our consideration:

> 1.  Does the ownership requirement described in the second sentence of RSA 480:1 apply to all real property occupied as a homestead, or does it apply only to manufactured housing occupied as a homestead?
>
> That is to say, assuming the homestead is real property other than manufactured housing, does the non-owning occupying spouse of one who holds a homestead right pursuant to RSA 480:1 also have a present, vested, non-contingent homestead right of his or her own, which is currently valued at $120,000? and
>
> 2.  Does a non-owning spouse who occupies (as a homestead) a manufactured housing unit with an owning spouse have a present, non-contingent, and enforceable homestead right with respect to that home, which is currently valued at $120,000?

For the reasons that follow, we conclude that RSA 480:1 (Supp. 2022) includes an ownership requirement that applies to all real property occupied as a homestead and a non-owning occupying spouse of another who holds a homestead right, pursuant to the statute, does not hold a present, non-contingent homestead right of his or her own.  With respect to the district court's second question, we exercise our discretion under Supreme Court Rule 34 to decline to answer because a response to that question is not "determinative of the cause then pending in the certifying court."  Sup. Ct. R. 34.

## I.  Facts

The following facts are taken from the district court's order or are otherwise undisputed.  This case commenced in December 2021 when the plaintiff, Katherine Brady, filed a Chapter 7 bankruptcy petition.  At the time of the petition, the plaintiff resided with her husband and children in a single-family residence located in Merrimack (hereinafter, the property).  The property is titled only in the plaintiff's name.  On Schedule C of the petition, the plaintiff claimed a homestead exemption under RSA 480:1 in the amount of $120,000.  Subsequently, the plaintiff amended her petition to claim an additional $120,000 homestead exemption on behalf of her non-debtor, non-owner

2

spouse.  The Chapter 7 Bankruptcy Trustee filed an objection to the second claimed homestead exemption.

In March 2022, the plaintiff converted her case to one under Chapter 13. Subsequently, the plaintiff amended Schedule D of her petition to add a second secured claim for her spouse in the amount of $120,000 based upon her spouse's claimed homestead exemption.  The defendant, Lawrence Sumski, Chapter 13 Bankruptcy Trustee, asserted the same homestead exemption objection as the predecessor Chapter 7 Trustee.

In June 2022, following a hearing, the Bankruptcy Court for the United States District Court of New Hampshire (Harwood, J.) concluded that to maintain a homestead right pursuant to RSA 480:1, a person must demonstrate both occupancy and ownership interests in the homestead property.  In re Brady, Bk. No. 21-10712-BAH, 2022 WL 1913497, at *4-5 (Bankr. D.N.H. June 3, 2022).  The court acknowledged that although the first sentence of RSA 480:1 does not use the word ownership or occupancy, the second sentence of the statute makes "clear that someone must own and occupy the manufactured housing in order to assert a homestead exemption under RSA 480:1." Id. at *4 (emphasis omitted).  The court reasoned that it would be "nonsensical for the homestead exemption to be more restrictive for manufactured housing than it is for all other housing" and, consequently, that "the statute as a whole supports an interpretation that ownership and occupancy are required to claim a homestead exemption in all housing." Id. Because the plaintiff's husband is not an owner of the property, the court concluded that he is not entitled to a homestead exemption under RSA 480:1, and the plaintiff could neither assert a homestead exemption on behalf of her husband, nor claim that he possesses a lien that secures his interest in the property.  Id. at *5.

The plaintiff appealed the bankruptcy court's decision to the federal district court.  The district court determined that "[t]he New Hampshire Supreme Court has yet to address the nuanced issues presented in this case" and "resolution of those issues implicates significant public policy matters for the State of New Hampshire." Brady v. Sumski, 647 B.R. 835, 843 (D.N.H. 2022).  Therefore, the district court certified these questions to us, which we accepted on February 9, 2023.  See Sup. Ct. R. 34.

II. Analysis

Responding to the certified questions requires us to interpret the homestead exemption statute set forth in RSA chapter 480 (2013 & Supp. 2022).  The interpretation of a statute presents a question of law that we review de novo.  See State v. Pinault, 168 N.H. 28, 31 (2015).  In matters of statutory interpretation, we interpret the words of the statute considered as a whole.  See id.  We first look to the language of the statute itself, and, if possible, construe

3

that language according to its plain and ordinary meaning.  Id.  Furthermore, we interpret the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.  Id.  Finally, we interpret statutes in the context of the overall statutory scheme and not in isolation.  Id.  "Statutory homestead protections are universally held to be liberally construed to achieve their public policy objective."  Maroun v. Deutsche Bank Nat'l Trust Co., 167 N.H. 220, 225 (2014).

RSA 480:1 provides that:

Every person is entitled to $120,000 worth of his or her homestead, or of his or her interest therein, as a homestead.  The homestead right created by this chapter shall exist in manufactured housing, as defined by RSA 674:31, which is owned and occupied as a dwelling by the same person but shall not exist in the land upon which the manufactured housing is situated if that land is not also owned by the owner of the manufactured housing.

RSA 480:1 (emphasis added).  "The homestead right is generally exempt from attachment or encumbrance."  Maroun, 167 N.H. at 225 (quotation omitted).  "The purpose of the homestead exemption is to secure to debtors and their families the shelter of the homestead roof."  Id. (quotation omitted).

The first certified question asks us to determine whether, pursuant to RSA 480:1, a non-owning, occupying spouse has a "present, vested, non-contingent homestead right of his or her own, which is currently valued at $120,000."  The plaintiff and, as the intervenor, the State, argue that pursuant to RSA 480:1, a person has a present, non-contingent homestead right in the homestead property owned by the person's spouse, even if that person is not on the title to the property, so long as the person occupies the property.  The defendant and the amicus curiae, Michael Askenaizer, Trustee for the Bankruptcy Estates of William Linane and Debora Linane, argue that a person must have an ownership interest in the homestead in order to establish a homestead right under RSA 480:1.

We begin our analysis by considering the first sentence of RSA 480:1, which has existed in substance, subject to dollar amount modifications, since 1851.  See Laws 1851, 1089:2; C.S. 196:2 (1854).  Although the first sentence includes the word "homestead" twice, we agree with both the State and the amicus that this repetition does not indicate redundancy.  See RSA 480:1.  Rather, the statute uses the word "homestead" in the first instance as a descriptor of a class of real property, and it uses the same word in the second instance as a reference to the right that the statute creates.  "[O]ccupancy is essential to the existence of the homestead right."  Stewart v. Bader, 154 N.H. 75, 88 (2006) (quotation omitted).  Our prior case law makes clear that, in addition to occupancy, ownership is necessary in order to be entitled to the

4

homestead right. See Beland v. Goss, 68 N.H. 257, 258 (1895) ("Ownership and occupancy being essential for the assertion of the right, it was lost upon the sale and removal.").

The parties dispute whether a non-owning, occupying person, whose spouse owns the property, has a homestead right under RSA 480:1 that is separate and distinct from that of the owning spouse. The plaintiff argues that the phrase "his or her interest therein" means that a "spouse who resides and cohabits with his or her spouse has an 'interest' in the home which gives each spouse a homestead interest even where one spouse does not have a title ownership interest." On the other hand, the terms "of his or her homestead, or of his or her interest therein" are possessory and require that the homestead belong to him or her.

The use of the term "interest therein" first appeared in the 1867 version of the homestead statute, although a similar construction of the phrase appears as early as 1851. See Laws 1867, 124:1 ("The wife, widow, and children of every debtor who is owner of a homestead or of any interest therein occupied by himself and his family, shall be entitled to so much of said homestead or interest as shall not exceed in value five hundred dollars . . . ." (emphasis added)); Laws 1851, 1089:2; C.S. 196:2 (1854). In the nineteenth century, our case law used the phrase "his interest therein" to indicate that an individual retains some amount of ownership over an item or parcel of land. See, e.g., Fife v. Ford, 67 N.H. 539, 539 (1893); Holbrook v. Bowman, 62 N.H. 313, 321 (1882); White v. Brooks, 43 N.H. 402, 407-08 (1861); George v. Green, 13 N.H. 521, 524 (1843); Bellows v. Dewey, 9 N.H. 278, 281 (1838).

Specifically in the context of a person exercising the homestead right, we have considered that a person's "interest therein" is possessory and refers to an ownership interest in the homestead property. For example, in Libbey v. Davis, we held that, prior to receiving title, the plaintiffs could claim a homestead right in their property after they purchased the property by taking a bond for a deed. Libbey, 68 N.H. 355, 355-56 (1895) ("A right to receive a conveyance by virtue of a contract is an interest in land upon which creditors may levy, and which may be subject to a homestead right."). We have also held that the equitable right to redemption constitutes an interest in which the statute provides a homestead right. Savings Bank of Walpole v. French, 105 N.H. 407, 409 (1964); Fellows v. Dow, 58 N.H. 21, 22-23 (1876). Here, our longstanding interpretation of the statute without any subsequent amendment by the legislature is evidence that our interpretation conforms to the legislative intent. See Ichiban Japanese Steakhouse v. Rocheleau, 167 N.H. 138, 143 (2014) ("Significantly, it has been sixteen years since we decided Galloway, and, in that time, the legislature has not amended RSA 275:53, III. Thus, we assume that our holding conforms to legislative intent."); cf. New Hampshire Retail Grocers Ass'n v. State Tax Comm'n, 113 N.H. 511, 514 (1973) ("It is a

well[-]established principle of statutory construction that a longstanding practical and plausible interpretation given a statute of doubtful meaning by those responsible for its implementation without any interference by the legislature is evidence that such a construction conforms to the legislative intent.").

Further, we have characterized the homestead right itself, not as an "interest," but as a "personal privilege." See Currier v. Sutherland, 54 N.H. 475, 486 (1874) ("The exemption of a homestead from attachment or levy is a personal privilege which the law gives to the owner, in order that he or his family may occupy it."). As defined by statute, the nature of that privilege is an exemption from attachment, levy, execution, and encumbrances subject to certain exceptions, see RSA 480:4 (Supp. 2022), for a defined duration, see RSA 480:3-a (2013). Accordingly, we conclude that the phrase "his or her interest therein" is possessory and requires an ownership interest in the homestead property.

The history of the homestead statute further supports our conclusion that RSA 480:1 does not provide a non-owning spouse with a vested, non-contingent interest in the homestead right that is separate and apart from that of the owning spouse. Prior versions of the homestead statute that addressed the distribution of a married person's property valued the homestead parcel at the applicable dollar amount and distributed that sum jointly to the two spouses. For example, the 1851 and 1854 versions permitted the sale of the homestead property when, "in the opinion of the appraisers," the homestead property "cannot be divided without injury and inconvenience." Laws 1851, 1089:4; C.S. 196:4 (1854). In such a situation, the owner was entitled to, "out of the proceeds of such sale" and

> with the written consent of his wife, the sum of five hundred dollars; *provided, however,* if the wife of such debtor shall not consent to such payment, the sheriff or officer having such proceeds shall deposit said sum of five hundred dollars in some savings institution in this State, to the credit of said debtor and wife; and the same may be withdrawn therefrom only by the joint order of the husband and wife . . . .

C.S. 196:4 (1854) (italics in original); see also Laws 1851, 1089:4.

In other words, the statute provided that the owner and his wife would jointly receive the sum of the value of the homestead property — at the time worth $500. Similar provisions existed in subsequent versions of the homestead statute. See, e.g., Laws 1867, 124:10-17; Laws 1878, 138:18-19. Notably, the Laws of 1891, 1901, and 1925, all of which adopted virtually the same language creating the homestead right that exists today in RSA 480:1, including "of his interest therein," nevertheless distributed the value of the homestead parcel jointly to the owner and the non-owning spouse following a sheriff's sale. Laws 1891, 138:1, 11; Laws 1901, 138:1, 11; Laws 1925, 215:1,

6

11.  This statutory history supports our interpretation that the homestead right of an owner and his or her non-owning spouse is valued at the amount set forth in the homestead statute — currently $120,000.  See RSA 480:1.

The plaintiff and the State argue that the phrase "his or her interest therein" as it appears in RSA 480:1 does not mandate ownership and instead, as the State explains, "refers to the interest a non-owning spouse has in the homestead estate/the homestead right held by the owning spouse."  For support, the plaintiff and the State point to RSA 529:20-a (2021), which addresses the process by which creditors seeking to execute on a homestead property must give notice.  RSA 529:20-a provides that:

> Along with the notice required under RSA 529:20, the party in whose name the execution has issued shall provide to any person who resides or appears to reside on the real estate to be sold, the following notice by certified mail:
> NOTICE
> IF YOU OR YOUR SPOUSE OWNS AND RESIDES IN THIS PROPERTY, YOU AND/OR YOUR SPOUSE MAY BE ENTITLED TO A HOMESTEAD EXEMPTION PURSUANT TO RSA 480:1.  THIS EXEMPTS $120,000 FOR A SINGLE PERSON AND $240,000 FOR A MARRIED COUPLE.

The plaintiff contends that this provision "suggests that both spouses, regardless of ownership, have a homestead exemption."  We disagree.  RSA 529:20-a neither creates nor defines the homestead right, but, rather, sets forth the notice requirements that must be provided to debtors and occupants of the home to apprise them of the fact that they might be entitled to a homestead exemption.  The use of "may" as it appears in "you and/or your spouse may be entitled to a homestead exemption" implies that the homestead right is not automatic; each spouse may have a homestead right, but, subject to the definition of the homestead right set forth in RSA 480:1, only if the spouse is an owner.  See RSA 529:20-a (emphasis added; capitalization omitted).  Similarly, the reference to $240,000 does not mean that every married couple is entitled to a homestead right valued at $240,000, but, rather, informs the recipient that certain married couples may be entitled to $240,000 if both spouses own the property.  See id.

The plaintiff and the State also point to our decisions in Sabato v. Federal National Mortgage Association, 172 N.H. 128 (2019), and Maroun to support their interpretation.  Both of these cases concern RSA 480:5-a (2013).  RSA 480:5-a provides that "[n]o deed shall convey or encumber the homestead right, except a mortgage made at the time of purchase to secure payment of the purchase money, unless it is executed by the owner and wife or husband, if any, with the formalities required for the conveyance of land."  (Emphasis added.)  In Sabato, the plaintiff's wife owned the subject property.  Sabato, 172

7

N.H. at 129. A year after purchasing the property, the wife refinanced the original mortgage and executed a new mortgage (hereinafter, first mortgage), which the plaintiff did not sign. Id. Several years later, the wife executed a second mortgage with the plaintiff's signature. Id. Subsequently, the mortgagee for the second mortgage foreclosed on its mortgage, purchased the property, and then sold its interest in the property to the defendant, the mortgagee for the first mortgage. Id. at 129-30. The defendant then sought to evict the plaintiff from the property, at which point the plaintiff asserted a homestead right. Id. at 130. The issue in Sabato was whether the defendant took title to the property subject to plaintiff's homestead exemption. Id. at 130-31. We concluded that, although the plaintiff waived his homestead right as to the second mortgage, "because the plaintiff did not sign the first mortgage, which was not made at the time of purchase, that mortgage did not comply with RSA 480:5-a, and, therefore, did not convey or encumber his homestead interest in the property." Id. at 132. Accordingly, we held that the plaintiff retained a homestead interest in the property. Id. at 134.

Sabato involved the waiver of the homestead right and stands for the fact that, pursuant to RSA 480:5-a, the homestead right cannot be waived without the consent of the non-owning spouse. See id. at 132; RSA 480:5-a. This conclusion makes sense, given that "the homestead laws were primarily enacted for the protection of the non-owner spouse and dependent children." Maroun, 167 N.H. at 229. Indeed, we said as much in Sabato when we explained that "'[t]he statutory protection of the homestead right' applies not only to the homeowner, but 'also extends to spouses who occupy the homestead but are not title owners of the property.'" Sabato, 172 N.H. at 132 (quoting Maroun, 167 N.H. at 226). Such statutory protections that extend to a non-owning spouse include, for example, the protections set forth in RSA 480:3-a (2013), see Maroun, 167 N.H. at 226, and the right to waiver set forth in RSA 480:5-a. Our resolution of the issues implicated by a waiver of the homestead right under RSA 480:5-a, however, is not dispositive as to whether a non-owning spouse possesses a homestead right that is separate and distinct from that of the owning spouse.[1] For similar reasons, Maroun is also not instructive in resolving this issue. See Maroun, 167 N.H. at 225-30 (concluding that the husband no longer had a homestead right he could assert against future creditors after he executed an affidavit in which he explained that he intended to release his homestead rights when he conveyed the deed to his wife).

The plaintiff looks to RSA 480:3-a to support her argument that the homestead right that RSA 480:1 grants is "clarified to be preserved in the non-

---

[1] Although language in Sabato v. Federal National Mortgage Association, 172 N.H. 128, 132-33, 137 (2019), may appear to suggest that the plaintiff possessed a homestead right valued at $120,000, the issue in Sabato was whether the plaintiff waived the homestead right — not whether the plaintiff possessed a homestead right independent of his spouse, see id. at 130-32.

8

owner spouse pursuant to [RSA 480:3-a] should the owner spouse predecease [the non-owning spouse] prior to their conveying the homestead." RSA 480:3-a provides that "[t]he owner and the husband or wife of the owner are entitled to occupy the homestead right during the owner's lifetime. After the decease of the owner, the surviving wife or husband of the owner is entitled to the homestead right during the lifetime of such survivor." Consequently, RSA 480:3-a "merely establishes the duration of the homestead right; it does not define the nature of the right itself," Boissonnault v. Savage, 137 N.H. 229, 232 (1993), in a similar way that RSA 529:20-a establishes notice requirements but does not define the nature of the homestead right itself.

Finally, the plaintiff and the State attempt to distinguish the second sentence of RSA 480:1, which establishes a homestead right in manufactured homes, from the first sentence of RSA 480:1, which establishes a homestead right in traditional "brick and stick" homes. Specifically, the plaintiff and the State, in response to the bankruptcy court's opinion, assert that the phrase "owned and occupied," as it appears in the second sentence, does not extend to the first sentence and is limited to manufactured homes. See In re Brady, 2022 WL 1913497, at *4. However, we have concluded that the first sentence of RSA 480:1 plainly requires ownership in order to establish a homestead right. We reject the notion that the second sentence of RSA 480:1 undermines our conclusion.

## III. Conclusion

Accordingly, for the foregoing reasons, we answer the first certified question in the negative and hold that ownership is required in order to establish a homestead right pursuant to RSA 480:1. Given that the answer to the district court's second question is not "determinative of the cause then pending in the certifying court" because the residence at issue is not a manufactured home, we exercise our discretion under Supreme Court Rule 34 and decline to answer the second question. Although we are bound to apply the statute as written, the legislature is, of course, free to amend the statutory scheme should it disagree with the conclusion that we reach today. See Eldertrust of Fla. v. Town of Epsom, 154 N.H. 693, 707 (2007).

Remanded.

MACDONALD, C.J., and HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

9